UNITED STATES *v.* CONKEY & CO. (No. 1545).[1]

1. UNREASONABLE TREASURY REGULATION INVALID.

　　The Treasury Department's regulation of November 25, 1912, issued under section 5, Panama Canal act, prescribing, as a prerequisite for admission free under said section, an exclusive method of proof that the importations conform to the description in the section, is unreasonable in that it requires the importer to produce the affidavit of persons over whom he has no control, and is, therefore, invalid.

[1] Reported in T. D. 36122 (30 Treas. Dec., 154).

2. EVIDENCE.
    Other evidence was properly admitted.

United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7668 (T. D. 34609).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

*Searle & Waterhouse* (*Harold P. Waterhouse* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The merchandise involved in this case is marine-glue pitch, which was classified by the collector of customs at Boston as a nonenumerated manufactured article, dutiable at 20 per cent ad valorem under the provisions of paragraph 480 of the tariff act of 1909, which, in so far as pertinent to the issue, reads as follows:

480. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured in whole or in part, not provided for in this section, a duty of 20 per centum ad valorem.

The importers protested that the goods were entitled to free entry under that part of section 5 of the Panama Canal act, passed August 24, 1912, which reads as follows:

· That all materials of foreign production which may be necessary for the construction or repair of vessels built in the United States, and all such materials necessary for the building or repair of their machinery and all articles necessary for their outfit or equipment, may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe.

The Board of General Appraisers sustained the protest and the Government appealed.

We take it that it is established by the record and not disputed—

(1) That L. W. Ferdinand & Co., on August 6, 1912, submitted to the Navy Department an offer to furnish marine-glue pitch for use at Government navy yards, which offer was accepted and was followed by a formal contract executed in accordance with its proposals on the 1st day of October, 1912.

(2) That on November 25, 1912, the Treasury Department issued regulations under section 5 of the Panama Canal act, upon compliance with which collectors of customs were instructed to admit free of duty materials imported on and after August 24, 1912, and provided for in said section.

(3) That to entitle the materials to free entry, the importers were required by such regulations to furnish to the collector of customs the following evidence of the proper disposition of the merchandise: First, an affidavit of the master builder, general storekeeper, or super-

intendent, setting forth that the materials had been wholly used in the construction or repair of the hull or in the building or repair of the machinery of a designated vessel in the course of construction or repair at the time of the making of the affidavit, and that no part of the materials had been used in any manner other than as indicated in the affidavit; second, the affidavit of the importers, stating that they had carefully investigated the statements made in the affidavit of the master builder, general storekeeper, superintendent, or other person under whose supervision the merchandise was put into the vessel, and that he believed such statements to be true, and, further, that no part of the said materials had been used in any manner other than as indicated.

(4) That subsequent to the making of the contract above mentioned, and on January 14, 1913, 17 drums of marine-glue pitch, weighing 5,100 pounds net, were imported at the port of Boston and were entered for admission free of duty on January 15, 1913.

(5) That on an order from the Navy Department, and in pursuance of the company's contract with the Government, there were delivered on January 17, 1913, to the hull division 17 drums of marine-glue pitch, weighing 5,100 pounds.

(6) That the importers requested the proper naval authorities to keep an account of the disposition of the merchandise and, by correspondence and personal interviews repeatedly endeavored to secure from the Navy Department the affidavit prescribed by the Treasury Regulations touching the use to which the material was put.

(7) That the Navy Department positively declined to accede to the request so made, and definitely notified L. W. Ferdinand & Co. by letter that the Navy storekeepers would not be permitted to keep an account of the glue delivered or to certify to the use to which it was devoted.

(8) That the Navy Department, in its letter to the company, took the position that the Government, and not the importers, was entitled to the benefit of free entry of the goods, and that, unless the department found it to its advantage to enter in separate accounts the stock used on American-built and on foreign-built Navy vessels, no such accounts would be kept, inasmuch as the terms of the bid and of the contract entered into with L. W. Ferdinand & Co. imposed no such obligation on the Navy Department.

On this state of facts, and in support of the appeal, the Government argues, first, that, as a condition precedent for the free entry of the goods, the importers were bound to submit to the collector, as evidence of the disposition of the goods imported, the affidavits prescribed by the Treasury Regulations; second, that the board, in the absence of such affidavits, erred in admitting evidence tending to prove the use to which the importation was put by the Navy Department.

It is well settled by the decisions of the courts, as counsel contends, that under a tariff provision admitting goods to free entry or at a reduced rate of duty, subject to Treasury Regulations, compliance with such regulations is a condition precedent to the vesting of the right accorded by the statute. It is equally well settled, however, that if such regulations are to be given effect they must be reasonable and not impossible of compliance. United States v. Dominici (78 Fed., 334, 1. c. 337–338); United States v. Brewer (92 Fed., 343, 1. c. 344). They must be regulative and not prohibitive. United States v. Morris (3 Ct. Cust. Appls., 146, 1. c. 149; T. D. 32386).

Before the first proposition of the Government can be sustained, therefore, it must be found that the regulation of the Treasury Department relied upon is reasonable; and to that conclusion we can not persuade ourselves, in view of the fact that under the regulation the affidavit of the master builder, general storekeeper, or superintendent becomes exclusive evidence of the use to which the goods were actually put, and the production of the prescribed evidence is left wholly dependent, not on the will of the importers but on that of a stranger to the importation, who is entirely free to do as he pleases in the matter. In this case the person designated by the regulation to make the affidavit therein provided for refused to furnish it and based his refusal not on the ground that the goods were not used as claimed, but on orders of the Navy Department which forbade compliance with the request of the importers and to which he could not deny obedience without peril to himself. And so we find in the present issue that one department of the Government prohibited the giving of information which another department exacted by regulation as a condition precedent for the free entry of goods which it was the intention of Congress to admit free if used in the construction or repair of American-built vessels. A regulation which actually brings about such an anomaly as that, which leaves the importers' right to the mercy and good will of persons not identified with the importation or subject to importers' control, which admittedly obliges the keeping of no record showing the purpose to which the merchandise was devoted, and which of necessity must result in an unequal application of the law and in a discriminatory classification of goods of the same identical kind, imported in the same identical way, and actually used for the same identical purpose, is, in our opinion, unreasonable and therefore invalid.

The Government urges that the importers, being aware of the regulation at the time the contract was made, might have stipulated or endeavored to stipulate with the Government for the keeping of the proper accounts and the production of the prescribed affidavit, and

that failing to secure such stipulation they might have protected themselves by keeping such accounts as would conform to the regulations. We do not think that that proposition can be successfully maintained—first, because the information necessary for the keeping of the accounts was not available to the importers, and, second, because if the regulation was valid the collector could accept under the decisions no evidence of the disposition of the goods other than the designated affidavit, whether such affidavit was provided for by contract or not. Moreover, even if the Government had contracted to supply the affidavit, that stipulation would impose no legal obligation on the general storekeeper, and if such an obligation were imposed and he failed to meet it the importers would be left in no better case than they are now. True, if the affidavit contracted for were refused, the importers might have recourse to such proceedings on the contract as the law permitted to recover damages for a breach thereof, but those proceedings, even if successful, would not secure free entry of the goods as contemplated by the statute, and this rather emphasizes the fact that the evidence demanded by the regulation was so far beyond the power of the importers to produce that not even litigation could secure it.

The contention is made that section 5 was designed to encourage American shipbuilding, and that therefore it was intended that the advantage of free entry should accrue to the ultimate consumer and not to the importers. That the purpose of Congress was to reduce the cost of ship construction and repair and thus advantage shipowners as an economic result of the section may be admitted, but it certainly can not be admitted that the section itself, either in terms or by any reasonable construction, imposes on importers any obligation to give the consumer the benefit of the free entry accorded to the goods imported by them. It may be that the Navy Department would have secured marine-glue pitch at a lower price had bids been submitted *after* section 5 was passed, but from that it can no more be argued that the Navy Department was entitled to the benefit of free entry than that the Navy Department would have been obligated to pay a higher price had the duty on the materials been increased after the bids were accepted.

The statute under consideration in terms limits free entry to those materials necessary for the construction or repair of vessels built in the United States. The goods under consideration were not classified by the collector as materials of that kind, and consequently it was incumbent on the importers to establish by competent proof that the goods in question met the statutory description; and from that obligation they were not relieved by the fact that the invalidity of a Treasury regulation made it unnecessary for them to provide the special and particular kind of evidence therein prescribed. From

that it follows that the testimony of H. T. Hagner, assistant general storekeeper at the Charleston Navy Yard, introduced by importers for the purpose of showing the actual use of the goods, was properly admitted. By that testimony it was proven that all material is issued by the general storekeeper on requisitions for some specific job, and that the 17 drums, containing 5,100 pounds of marine-glue pitch, received by the Navy Department on January 13, 1913, from L. W. Ferdinand & Co., were issued on such requisitions, and that to the best knowledge of the assistant general storekeeper the marine-glue pitch so issued was used in the construction and repair of American-built vessels. In the light of that testimony, which is uncontradicted, and in view of the fact that we regard as invalid the Treasury regulation under discussion, we must hold that the 17 drums of marine-glue pitch involved in this appeal were entitled to free entry.

The decision of the Board of General Appraisers is therefore *affirmed*.

Following United States *v.* Conkey & Co. (6 Ct. Cust. Appls., 487; T. D. 36122), just decided, the Treasury Department's regulation of November 25, 1912, issued under section 5, Panama Canal act, prescribing, as a prerequisite for admission free under said section, an exclusive method of proof that the importations conform to the description in the section is unreasonable in that it requires the importer to produce the affidavit of persons over whom he has no control, and is, therefore, invalid.

