(C. D. 133)

MEXICAN PETROLEUM CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 21, 1939)

*C. H. Thompson* and *Kellogg, Emery & Inness-Brown* (*J. K. Egan* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster* and *William J. Vitale*, special attorneys), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges

McCLELLAND, Presiding Judge: During the month of October 1936, plaintiff corporation imported into the port of Baltimore 236,568 gallons of bunker oil from the Dutch West Indies and placed it in customs bonded storage tanks. Such oil was at that time subject to tax at the rate of one-half of 1 cent per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932. It was, however, later sold to the Baltimore Mail Line, a subsidiary of the Roosevelt Steamship Co., Inc., and on November 2 of the same year was withdrawn from the bonded storage tanks and delivered under customs supervision into the fuel tanks of the steamship *City of Hamburg*, owned and operated by the said Baltimore Mail Line.

The tax above mentioned was imposed on the oil by the collector, and the protest at bar is directed against such imposition claiming the same to be free of such tax under the provisions of section 630 of the revenue act, *supra*. Section 630 reads as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 601 (b).

It is not disputed that the vessel *City of Hamburg* was, at the time of sale and delivery of the oil, actually engaged in foreign trade. The refusal of the collector to grant exemption under section 630, *supra*, is stated in the letter of transmittal of the protest to be based upon failure of compliance with articles 458 and 459 of the Customs Regulations of 1931 as amended by T. D. 46724 and T. D. 48788, which are regulations promulgated by the Secretary of the Treasury under the authority of section 309 of the Tariff Act of 1930 governing exemption of supplies for vessels from the duties imposed under the Tariff Act of 1930, and were extended in T. D. 46522 to cover exemption from the taxes imposed under title IV of the Revenue Act of 1932 by virtue of section 630 thereof.

It will be noted, however, that T. D. 48788, *supra*, was not promulgated until January 28, 1937, more than two months after the withdrawal and lading of the oil in question, so that the involved regulations, as amended only by T. D. 46724, as they were in force at that time read as follows:

Art. 458. *Delivery permit—Lading.*—(*a*) Upon the filing of the withdrawal and the execution of the bond, when required, the collector shall issue a permit on customs Form 7506A.

(*b*) A copy of the withdrawal will be transmitted to the surveyor or inspector acting as such, who shall designate a customs officer to supervise the lading of the merchandise and make a return thereof.

(*c*) Except where the vessel clears at the port at which the withdrawal is made direct for a foreign port, the merchandise shall be entered on the store list of the vessel on which laden, which fact shall be certified by the marine clerk or officer acting as such on the withdrawal.

Art. 459. *Intermediate ports.*—A copy of the store list showing the articles withdrawn and taken on board as supplies shall be made on or attached to the manifest, and if the vessel touches at an intermediate port in the United States the collector at such port shall see that no portion of the supplies so noted is landed except upon entry and payment of duties.

It appears from the record that after departing from the port of Baltimore the *City of Hamburg* made a scheduled stop at the port of Norfolk, from whence she cleared for foreign ports, and that the oil in issue was actually used for the purpose of fuel supplies for the vessel and none of it was landed. The particular omission which forms the basis for the collector's refusal to allow exemption from the tax under section 630, *supra,* is the failure to show on the store list or on the manifest of the vessel that the oil in issue was bonded oil, with the result that the collector of customs at the port of Norfolk was not notified of its status.

Two alternative contentions are made herein by the plaintiff importer in support of the protest: (1) that the foregoing customs regulations were actually complied with, and (2) that if it should be held that there was a failure of compliance therewith such regulations are void for want of reasonableness in that—

they make the Importer's rights under said statutes dependent upon the acts of a third party who is a stranger to the importation and over whom the Importer has no right or power of control.

We are satisfied from the record that if the regulations quoted were valid the notations placed upon the ship's manifest with reference to the oil in issue fell short of constituting compliance therewith, and the plaintiff's first contention above must fall. We deem it unnecessary to enter upon any discussion of that matter, however, since we are of the opinion that plaintiff's second contention is well-founded.

Section 630, *supra,* makes compliance with the regulations of the Secretary of the Treasury promulgated thereunder a condition precedent to the right of exemption from the tax. It is well settled, however, that such regulations must be reasonable in order to make compliance therewith a condition to the enjoyment of the right of

exemption. In *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386, it was said:

> While it is the established rule of law that where the right of exemption from, or to a reduced rate of, duty is by the Congress made subject to regulations to be prescribed therefor by the Secretary of the Treasury, these regulations nevertheless must be reasonable. The principle is that they must be regulative and not prohibitive. The right to import free of duty must not be destroyed or rendered inoperative by the prescribed regulations.

It is obvious from the nature of the documents that ships' store lists or manifests are at no time in the custody or under the control of one whose sole relation to the owners of the vessel is that of seller of supplies. It is also obvious that entry on such store list or manifest of the lading of such supplies can be properly made only *after* delivery of the supplies. Under such circumstances the steamship owners or their agents or employees, not being under the control of the seller, might fail, as was the case here, to make the necessary entries on the store list or manifest, leaving the seller of supplies otherwise tax-exempt under section 630, *supra*, without the necessary means of enjoying the right to exemption from the tax so far as the regulations quoted *supra* are concerned.

A similar situation existed in the case of *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122. Section 5 of the Panama Canal Act provided that—

> all materials of foreign production which may be necessary for the contruction or repair of vessels built in the United States, and all such materials necessary for the building or repair of their machinery and all articles necessary for their outfit or equipment, may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe.

The regulations issued by the Secretary of the Treasury provided that an affidavit of the master builder, general storekeeper, or superintendent—

> setting forth that the materials had been wholly used in the construction or repair of the hull or in the building or repair of the machinery of a designated vessel in the course of construction or repair at the time of the making of the affidavit, and that no part of the materials had been used in any manner other than as indicated in the affidavit—

must be furnished to entitle the materials to free entry. The Navy Department, to one of the yards of which the imported material there in question had been furnished, refused to permit its storekeepers to keep accounts of the material delivered or to certify to the use to which it had been put, and in the absence of the required affidavit the collector liquidated the entry as dutiable, whereupon the importer filed a protest which was sustained by this court. Upon appeal to the Court of Customs and Patent Appeals the decision of this court was affirmed, and Judge Smith, writing the unanimous opinion of the appellate court, said in part:

Before the first proposition of the Government can be sustained, therefore, it must be found that the regulation of the Treasury Department relied upon is reasonable; and to that conclusion we cannot persuade ourselves, in view of the fact that under the regulation the affidavit of the master builder, general storekeeper, or superintendent becomes exclusive evidence of the use to which the goods were actually put, and the production of the prescribed evidence is left wholly dependent not on the will of the importers but on that of a stranger to the importation, who is entirely free to do as he pleases in the matter. In this case the person designated by the regulation to make the affidavit therein provided for refusing to furnish it and based his refusal not on the ground that the goods were not used as claimed but on orders of the Navy Department which forbade compliance with the request of the importers and to which he could not deny obedience without peril to himself. And so we find in the present issue that one department of the Government prohibited the giving of information which another department exacted by regulation as a condition precedent for the free entry of goods which it was the intention of Congress to admit free if used in the construction or repair of American-built vessels. A regulation which actually brings about such an anomaly as that, which leaves the importers' right to the mercy and good will of persons not identified with the importation or subject to importers' control, which admittedly obliges the keeping of no record showing the purpose to which the merchandise was devoted, and which of necessity must result in an unequal application of the law and in a discriminatory classification of goods of the same identical kind, imported in the same identical way, and actually used for the same identical purpose, is, in our opinion, unreasonable and therefore invalid.

The parallel between the situation in the *Conkey* case, *supra*, and that in the case at bar is at once apparent. Such regulations as were passed upon in the *Conkey* case and those the subject of the instant case are, however, to be distinguished from regulations, compliance with which is a condition precedent to exemption from all or part of certain tariff duties, which are reasonable in the sense that compliance therewith is within the power of the one claiming exemption, such as those passed upon in *Bradley Martin, Jr.* v. *United States*, 3 Ct. Cust. Appls. 384, T. D. 32982; *United States* v. *Tsai*, 9 id. 42, T. D. 37902; *United States* v. *Bird*, 16 id. 306, T. D. 42876; *Hinkle* v. *United States*, 19 C. C. P. A. 125, T. D. 45257, and *United States* v. *Friedman*, 21 id. 496, T. D. 46960. In all of those cases the applicable customs regulations required as a condition precedent to the free entry of artistic antiquities the production of a certificate by the foreign seller or shipper, and such regulations were held to be reasonable since the importer had the alternative of refusing to purchase the article unless the certificate was given, that is, the importer had the power to compel the seller or shipper to furnish the certificate at the time of purchase. The plaintiff in the case at bar had no such power, however, since in the very nature of things the delivery of the oil necessarily preceded the notation of its lading on the store list or manifest.

We, therefore, hold articles 458 (c) and 459 of the Customs Regulations of 1931, insofar as compliance therewith was made a condition

precedent to the exemption from tax granted under section 630, *supra*, to have been invalid. Since it appears from the record that both the statute and the other applicable customs regulations were strictly complied with, the protest is sustained, the decision of the collector being reversed.

Judgment will issue accordingly.