UNITED STATES *v.* MEXICAN PETROLEUM CORP. (No. 4259)[1]

---

[1] C. A. D. 130.

United States Court of Customs and Patent Appeals, May 29, 1940

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William J. Vitale*, special attorney, of counsel), for the United States.

*C. H. Thompson* and *J. K. Eagan* for appellee.

[Oral Argument February 7, 1940, by Mr. Lawrence and Mr. Eagan]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal brings before us for review the judgment of the United States Customs Court, First Division, in a suit brought by appellee to recover a certain tax assessed and collected by the Collector of Customs at the port of Baltimore on fuel oil.

The said merchandise consisted of 236,568 gallons of fuel oil, 144,972 gallons of which were imported on October 1, 1936, entered under warehouse entry No. 2061 and placed in a customs bonded warehouse of appellee at the port of Baltimore, and 91,596 gallons of which

were imported on October 29, 1936, entered under warehouse entry No. 2191 and placed in the same warehouse. The oil was at that time subject to a tax at the rate of one-half of 1 cent per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932.

All of the oil was sold to the Baltimore Mail Line, a subsidiary of the Roosevelt Steamship Co., Inc., and was withdrawn from the said warehouse and delivered under customs supervision into the bunkers of the steamship *City of Hamburg*, owned and operated by the Baltimore Mail Line, on November 2, 1936.

The collector levied the said tax on the oil and appellee protested in writing against the said action of the collector, claiming the oil to be free of such tax under the provisions of section 630 of the said act which reads as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 601 (b).

At the time of the sale and delivery of the oil the *City of Hamburg* was actually engaged in foreign trade. The record discloses that the vessel was bound from Baltimore for the ports of London, Hamburg, and Bremen, via Norfolk, Va., and that the oil involved herein was sold for and used as fuel supplies and that none of it was landed.

The collector refused to allow exemption from the tax as provided for under section 630, *supra*, for the reason that the store list or the manifest of the vessel failed to show that the said oil was bonded oil and as a result of this failure the Collector of Customs at the port of Norfolk was not notified of its status.

In the report of the collector it is stated that his refusal to grant exemption from the said tax was based upon failure of compliance with articles 458 and 459 of the Customs Regulations of 1931, as amended by T. D. 46724 and T. D. 48788. These regulations were promulgated by the Secretary of the Treasury by virtue of the authority of section 309 of the Tariff Act of 1930 pertaining to the exemption of supplies for vessels from duties imposed under the Tariff Act of 1930, and were extended in T. D. 46522 to cover exemptions from the taxes imposed under title IV of the Revenue Act of 1932 by virtue of section 630, *supra*.

T. D. 48788, *supra*, is not applicable herein for the reason that it was·not promulgated until more than 2 months subsequent to the withdrawal and lading of the involved oil. Therefore the regulations, ·as amended by T. D. 46724 only, are pertinent to the issue. Said section 309 and the amended regulations read as follows:

SEC. 309. SUPPLIES FOR CERTAIN VESSELS.

(a) EXEMPTION FROM CUSTOMS DUTIES AND INTERNAL-REVENUE TAX.— Articles of foreign or domestic manufacture or production may, under such regulations as the Secretary of the Treasury may prescribe, be withdrawn from bonded warehouses or bonded manufacturing warehouses free of duty or internal-revenue tax for supplies (not including equipment) of vessels of war, in ports of the United States, of any nation which may reciprocate such privilege toward the vessels of war of the United States in its ports, or for supplies (not including equipment) of vessels of the United States employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions, but no such article shall be landed at any port or place in the United States or in any of its possessions.

(b) DRAWBACK.—Articles of domestic manufacture or production laden as supplies upon any such vessel shall be considered to be exported within the meaning of the drawback provisions of this Act.

Art. 458. Delivery permit—Lading.—(a) Upon the filing of the withdrawal and the execution of the bond, when required, the collector shall issue a permit on customs Form 7506A.

(b) A copy of the withdrawal will be transmitted to the surveyor or inspector acting as such, who shall designate a customs officer to supervise the lading of the merchandise and make a return thereof.

(c) Except where the vessel clears at the port at which the withdrawal is made direct for a foreign port, the merchandise shall be entered on the store list of the vessel on which laden, which fact shall be certified by the marine clerk or officer acting as such on the withdrawal.

Art. 459. Intermediate ports.—A copy of the store list showing the articles withdrawn and taken on board as supplies shall be made on or attached to the manifest, and if the vessel touches at an intermediate port in the United States the collector at such port shall. see that no portion of the supplies so noted is landed except upon entry and payment of duties.

In the trial court appellee contended that the foregoing customs regulations were actually complied with and, in the alternative, that such regulations, if they were not complied with, are void for want of reasonableness in that—

they make the Importer's rights under said statutes dependent upon the acts of a third party who is a stranger to the importation and over whom the Importer has no right or power of control.

The court below held that since the manifest of the ship did not disclose that the said oil was bonded, there had not been compliance with the quoted regulations, but further held articles 458 (c) and 459, *supra*, to be invalid, insofar as compliance therewith was made a. condition precedent to the exemption from tax granted under section 630, *supra*.

Applicant has raised here for the first time in this litigation the question of the timeliness of the protest. Before the trial court everyone concerned proceeded on the theory that this question was not in the case. This is not surprising since the report of the collector states that "The requirements of section 514, title IV, part III, Tariff Act of 1930, were complied with." Naturally and properly the trial court and the parties to the suit assumed from that statement there was no question that the protest had been timely filed.

The record discloses, among other things, that warehouse entry No. 2191, dated October 29, 1936, covering the withdrawal of 91,596 gallons of oil, was liquidated November 27, 1936; that warehouse entry No. 2061, dated October 1, 1936, covering 144,972 gallons of oil, was liquidated December 14, 1936.

Subsequent to the liquidations the following letter was written to the collector:

MEXICAN PETROLEUM CORPORATION,
P. O. BOX 1417,
*Baltimore, Md., January 29th, 1937.*

COLLECTOR OF CUSTOMS,
*Baltimore, Maryland.*

Dear Sir: We refer to your demand of recent date for payment of duty on two parcels of Bonded Fuel oil delivered to Baltimore Mail Line, S. S. *City of Hamburg* under date of November 3rd, 1936. This delivery consisting of 3,451.71 net barrels, or 144,972.00 net gallons under Withdrawal No. 223 of cargo from S. S. *F. W. Weller* Entry No. 2061, discharged Baltimore October 1st, 1936, and 2,180.86 net barrels, or 91,596.00 net gallons under withdrawal No. 222 from S. S. *Storanger* Entry No. 2191 discharged Baltimore October 27th, 1936. The total duty being $1,182.84 demanded as a result of Agent or Master failing to manifest this bonded oil when clearing the vessel.

It should be understood that we had entirely no jurisdiction over the action of the Master or Agent of this vessel to see that the oil was properly reported on the manifest, although we promptly reported the outturn figures to Owners for this purpose as has been customary for many years. Their failure to so report the fact to your office undoubtedly resulted from oversight. This is not a case where suspicion of intent to evade any article of Customs regulations could be entertained, as the oil was withdrawn from our Bonded fuel oil tank under supervision of Custom's Storekeeper and Weighing Division Gauger. The Gauger accompanied the Barge to shipside, discharge was made under his jurisdiction, he reported outturn to your office on completion of discharge, and your records covering the delivery agreed with our own.

There is no question but that the delivery was regular in every respect, and it is unfair that we should be penalized for the omission of the party clearing the vessel over whom we have no control. We did not assist in clearing the vessel, nor aid in the preparation of clearance papers and the fact that we have been delivering Bonded oil to their vessels weekly, via Barge, since September 1932, without a similar condition arising testifies to our rigid compliance with Customs' regulations.

The Master of the vessel made affidavit on his return to this Port that the entire quantity of Bonded oil was consumed enroute to Havre, France, Hamburg, Germany, and return to the United States and that no portion of said Bunkers was

discharged at an American Port. The affidavits are submitted, herewith, in substantiation.

We trust you will examine the situation in the light that we did everything possible to avoid any irregularity and ask that you grant us relief from payment of the duty involved.

Yours very truly,

MEXICAN PETROLEUM CORPORATION,

/s/ W. W. Hulin, *Superintendent.*

HJM/ED.

On February 2, 1937, the collector referred said letter to the Bureau of Customs "for a decision regarding the applicant's plea for relief in the premises." In an answering letter dated March 6, 1937, the Commissioner of Customs stated to the collector that the Bureau of Customs was without authority to grant the request of appellee' for for the reason that the regulations were not fully met. On March 11, 1937 the collector wrote to appellee notifying it of the said answer of the bureau, and attached to the notification a copy of the "Bureau's decision" dated March 6, "denying your request for relief, in view of which payment of these duties is herewith demanded with the least practicable delay."

On May 10, 1937 appellee filed a formal protest against the action of the collector in assessing the said tax, and on May 20, 1938 filed an amended protest which is in substance the same as the protest of May 10, 1937, but which further protests against the alleged decision of the collector of March 11, 1937. It is appellee's contention that the letter of March 11, 1937, hereinbefore mentioned, was an appealable decision of the collector and that therefore the protest as amended on May 20, 1938 was timely filed.

Section 514 of the Tariff Act of 1930, in effect at the time of entry of the involved merchandise, reads, in part, as follows:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered

in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto.   *   *   *

Section 515 of the said tariff act provides, in part, as follows:

SEC. 515. SAME [Protest against Collector's Decisions]

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter remit or refund any duties, charge, or exaction found to have been assessed or collected in excess, or pay any drawback found due, of which notice shall be given as in the case of the original liquidation, and against which protest may be filed within the same time and in the same manner and under the same conditions as against the original liquidation or decision.  If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law.

There can be no question but that, since the merchandise was liquidated on November 27, 1936 and December 14, 1936, the protest filed May 10, 1937 is untimely in view of section 514, *supra*, for the reason that it was filed on a date more than 60 days after liquidation, and the liquidations had become final and conclusive. .

With respect to the amended protest of May 20, 1938, it is to be noted that section 515, *supra*, provides only for the filing of a protest within 60 days when the collector modifies his original decision "in whole or in part" within 90 days of the filing of the original protest. The collector made no modification of his original liquidations and it is obvious that a protest against his affirming his original decision does not lie.  By the letter of March 11, 1937 the collector merely made a further demand for payment of the tax in view of the decision of the Bureau of Customs.   This demand, based upon a prior liquidation, is not a decision or exaction against which a protest may be filed. *United States* v. *Andrews & Co. (Inc.)*, 14 Ct. Cust. Appls. 62, T. D. 41576; *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. (Customs) 135, T. D. 43470; *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293.

It is the contention of appellee that in this case nothing short of actual notice of liquidation can be sufficient to start the running of the statutory period of 60 days within which it must file its protest, and that since actual notice seemingly was brought to it by telephone on the date of the said letter of January 29, 1937, the protest filed March 10, 1937 was timely.

Section 505 of the Tariff Act of 1930, among other things, provides that the "*   *   * Collector   *   *   * shall give notice of such

liquidation in the form and manner prescribed by the Secretary of the Treasury." The manner of notice prescribed by the said secretary and in force and effect at the time of the involved importations is contained in article 819, Customs Regulations of 1931. The said article provides, in part, as follows:

(h) When the entry is returned to the collector after the assessment of duty has been verified by the comptroller, the liquidation shall be deemed completed. The entry will then be immediately stamped with the word "liquidated" and the date of stamping, which is the legal evidence of liquidation, and on the same day a bulletin notice thereof (customs Form 4333) must be posted in a conspicuous place in the customhouse for the information of importers.

It is not contended here that the notices of liquidation were not duly posted as required by the said customs regulations, but it is contended by appellee that the bulletin notice of liquidation in this case is not a sufficiently valid notice to bind it to file its protest within 60 days of such bulletin notice. In support of this contention appellee argues in its brief as follows:

This regulation of the Secretary of the Treasury is, undoubtedly, sufficiently reasonable to apprise the Importer that his goods have been liquidated in those cases in which the goods have been imported for direct consumption or other taxable uses, because the Importer anticipates a tax being placed thereon. However, in those cases, such as the instant case, in which the goods were not imported for direct consumption but were imported-for use as fuel supplies in vessels engaged in foreign trade and actually used as such, the Importer had no reason to anticipate or believe that a tax would be imposed since such goods are exempt under the statutes from the duty or tax in question—the facts of all of which were, of course, known by the Collector of Customs at the port of Baltimore.

We cannot agree with this contention. The record does not show that all of the oil imported by appellee when removed from its tanks is sold and used as fuel supplies as was the oil herein. In any event, appellee was an importer of foreign merchandise and as such was charged with the knowledge that merchandise such as is here involved was at the time of importation subject to a tax of one-half of 1 cent per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932.

The regulation was made within the authority vested in the Secretary of the Treasury and is valid.

After the question of timeliness of the protest was raised in the brief for the Government, appellee contended in its brief, in addition to its other contentions, that the letter of January 29, 1937 is in fact a protest. If it be so considered, there is a protest that is timely at least as to the liquidation of December 14, 1936.

While it is true, as argued in the reply brief of the Government, that the record shows the said letter apparently was at no time considered as a protest by the collector, the importer or the court below,

the probable reason for it not being so considered by the latter two is clear, as has been hereinbefore set out. But the letter was made part of the record in the court below, counsel for the Government there stating that certain documents, including the letter, were to be admitted in evidence with the consent of counsel for appellee. The letter is, therefore, part of the record. In our opinion it is a sufficient protest. While it is not a model as to form, we think it fairly responds to the requirements of section 514, *supra*.

Appellant contends that appellee could have filed a cross-appeal if it cared to raise the question that the said letter was a protest. We fail to understand how it could have or why it should have done so. Everyone concerned in this litigation took it for granted that the protest of May 10, 1937 was timely, until the question of timeliness was raised for the first time by the appellant in its brief in this court. There had been no reason for appellee to test the sufficiency of the letter as a protest before the trial court, and, therefore, there was no occasion for that court to pass upon it. No cross-appeal could have been filed on a matter that had not been presented to and ruled upon by the court below. Appellee had no reason to be dissatisfied with the judgment of the trial court and hence no reason to cross-appeal.

There is, as we have said, a timely and sufficient protest in the form of a letter dated January 29, 1937 in the record as to the warehouse entry No. 2061 which was liquidated December 14, 1936. This protest, however, is not timely as to warehouse entry No. 2191 which was liquidated November 27, 1936 and must be dismissed as to said entry.

The issue raised by the protest letter is identical with that which was passed upon by the trial court and which was raised by the formal protest of May 10, 1937, which, on appeal, should have been found to be untimely. Since in our opinion the said letter is a sufficient protest, and since it is obvious that it is timely as to warehouse entry No. 2061, we hold that the issue as set out in the protest letter was adjudicated by the trial court and is before us for determination as to the said entry 2061.

We then come to the question as to whether or not articles 458 (*c*) and 459 of the Customs Regulations of 1931, as amended by T. D. 46724, are valid.

It will be observed that section 309, *supra*, in making provision for exemption of ships' supplies from customs duties or internal-revenue tax, states, "but no such article shall be landed at any port or place in the United States or in any of its possessions." Clearly, the exemption is made conditional and this condition can only mean that should bonded ships' supplies be so landed they would be subject to the payment of duties or internal-revenue tax. The quoted clause is therefore construed to be a *proviso* or a condition essential to exemption.

Since the statute itself prescribes that ships' supplies are only conditionally free of duty or tax, under regulations by the Secretary of the Treasury, it appears to us that the involved regulations, compliance with which merely insures that the intention of the Congress be carried out, are in conformity with the statute.

The case of *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122 (30 Treas. Dec. 154), relied upon by the trial court as presenting a situation parallel to the instant case, is not in point in that section 5 of the Panama Canal Act, passed August 24, 1921, by authority of which the regulations contested therein were prescribed, contained no condition or *proviso* attaching to exemption from duty of imported material entering into ships built in the United States. If section 309, *supra*, did not contain the condition as set forth herein we might agree that the reasoning and holding of the court below were correct.

In the cases of *Bradley Martin, Jr.,* v. *United States*, 3 Ct. Cust. Appls. 384, T. D. 32982; *United States* v. *Tsai*, 9 id. 42, T. D. 37902; *United States* v. *Bird*, 16 id. 306, T. D. 42876; *Hinkle* v. *United States*, 19 C. C. P. A. (Customs) 125, T. D. 45257; and *United States* v. *Friedman*, 21 id. 496, T. D. 46960, it is true, as was stated by the trial court herein, that:

* * * In all of these cases the applicable customs regulations required as a condition precedent to the free entry of artistic antiquities the production of a certificate by the foreign seller or shipper, and such regulations were held to be reasonable since the importer had the alternative of refusing to purchase the article unless the certificate was given, that is, the importer had the power to compel the seller or shipper to furnish the certificate at the time of purchase. * * *

In the *Friedman* case, *supra*, however, this court said:

Appellee's counsel points out that the seller could not be compelled to disclose this information, and hence it was impossible for the purchaser to secure it. This is a misfortune of the purchaser, whose good faith we do not question, but this fact does not obviate the necessity of complying with the regulations in order to secure free entry of the article under paragraph 1708.

As we said in the case of *Hinkle* v. *United States, supra*—

* * * The free importation of artistic antiquities is, however, a privilege, to take advantage of which the laws and pertinent regulations must be strictly complied with.

It may be observed from a reading of the regulations that appellee had an alternative in the sale of its bonded oil. If it could not secure compliance with the regulations it could have refused to sell the oil except as fuel supplies to be used on vessels clearing direct to a foreign port, or if the sale was made under the circumstances shown here appellee could have, by proper contract, protected itself against failure of the master to comply with the regulations.

The regulations are entirely within the authority of the Secretary of the Treasury and in view of the statute are reasonable and must be

complied with. In fact, appellee must have seen to it that they were complied with for a period of over 4 years during which it sold bonded oil as fuel supplies to the Baltimore Mail Line in 175 instances, in all of which the regulations apparently were observed.

For the reasons herein stated the protest filed May 10, 1937 as amended on May 20, 1938, and that part of the protest in the form of the letter dated January 29, 1937 relating to entry No. 2191 should be dismissed as untimely; and that part relating to entry No. 2061 should be overruled.

It is so adjudged and the judgment of the trial court is *reversed* and the case *remanded* for compliance with the views herein expressed.