· (C. D. 1193)

STANDARD OIL CO. OF PUERTO RICO *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 2, 1949)

*Juan Orlando Herrero* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: In this case plaintiff protests the action of the collector of customs at the port of San Juan, Puerto Rico, in assessing internal revenue taxes on a quantity of fuel oil which was withdrawn from bonded tanks, and, it is claimed, was delivered as supplies to an American vessel engaged in trade between the United States and its possessions. The tax on said fuel oil was levied and collected at the rate of 1/4 cent per gallon under the provisions of section 3422 of the Internal Revenue Code, as modified by the Mexican Trade Agreement, T. D. 50797. Plaintiff claims exemption from tax under the

provisions of section 3451 of the Internal Revenue Code as supplies for vessels. We quote the pertinent portions of said section as follows:

**§ 3451. Exemption from tax for certain supplies for vessels.**

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this chapter shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. * * * [I. R. C. (26 U. S. C. § 3451).]

The applicable customs regulations are found in section 10.61, Customs Regulations of 1943 (19 C. F. R., Cum. Supp. 10.61), as amended by T. D. 51567, 81 Treas. Dec. 235, and are as follows:

**10.61 Withdrawal permit; lading; stores log.**—(a) * * *

(b) Upon the lading on a vessel of supplies withdrawn from bond for which an affidavit is required under section 10.64 of these regulations, they shall be entered by a representative of the vessel in a special bound stores log book of the vessel in ink or indelible pencil. The stores log shall be kept on board available for customs inspection and use at any time and shall contain the following information with respect to each withdrawal: Port where laden; date of lading; withdrawal number; quantity and description. After the supplies have been so entered in the vessel's stores log, the customs officer who supervised the lading thereof shall place his name and title after the entry in the log. (Sec. 5 (a), 52 Stat. 1080; 19 U. S. C. 1309 (a).)

The above regulation was promulgated by the Secretary of the Treasury under authority of section 309 of the Tariff Act of 1930, as amended by section 5 (a) of the Customs Administrative Act of 1938 and by the act of July 22, 1941 (19 U. S. C. §1309 (a)).

The pertinent portion of said section 309 is as follows:

(a) Exemption from customs duties and internal-revenue tax.—Articles of foreign or domestic manufacture or production may, under such regulations as the Secretary of the Treasury may prescribe, be withdrawn from bonded warehouses, bonded manufacturing warehouses, or continuous customs custody elsewhere than in a bonded warehouse free of duty or internal-revenue tax, * * * for supplies (not including equipment) of vessels * * * actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions, * * *.

The evidence produced on behalf of the plaintiff consists of testimony of the plant superintendent of the plaintiff company at Puerto Rico and one other witness. From their testimony it is apparent that the oil in question, consisting of about 803 barrels, was delivered as supplies to the American steamship *Oscar F. Barret*, at the port of Puerto Rico and that the person in charge of said vessel denied receipt of the oil and refused to make formal entry thereof in a "special bound stores log book of the vessel," as required by the regulations. Upon receiving such refusal, the plant superintendent consulted the ship's agent and a representative of that firm accompanied him aboard the

ship and talked with both the captain and the engineer who both gave as the reason for not making entry in the log book that they had no oil on board. Thereupon, the plant superintendent checked all the piers under his jurisdiction in order to make sure that no other ship had received the oil and that no oil "had been thrown into the bay." In spite of the statements of the captain and the engineer that they had no oil on board the ship, this witness testified that a few days later he received a receipt signed by the ship's agent covering this quantity of oil.

Government counsel conceded at the hearing that this oil was delivered on board the vessel in question and it is not denied that the vessel was actually engaged in trade between the United States and its possessions at the time the oil was delivered. It is the Government's position, however, that the regulation above set forth is reasonable, valid, and mandatory, and not having been complied with, the collector was acting within the law in collecting this tax.

It thus appears from the record that the only point in dispute is whether, in view of noncompliance with the regulations, the collector acted legally in levying the internal revenue tax upon the oil in question.

Articles 458 and 459 of the Customs Regulations of 1931, as amended by T. D. 46724, being corresponding provisions to section 10.61, *supra*, were held to be reasonable and valid. *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. (Customs) 90, C. A. D. 130. That case involved the dutiable status of a quantity of imported fuel oil which was withdrawn from bonded warehouse and delivered under customs supervision into the tanks of the steamship *City of Hamburg*, which vessel at that time was bound from Baltimore, Md., for foreign ports, via Norfolk, Va. At the time of the sale and delivery of the oil the *City of Hamburg* was actually engaged in foreign trade and the oil involved was sold for and used as fuel supplies and none of it was landed. The collector refused to allow exemption from tax for the reason that the store list or the manifest of the vessel failed to show that the said oil was bonded oil, and that as a result of this failure, the collector at the port of Norfolk, a port of call, was not notified of the status of the oil. The plaintiff before the trial court had contended that the regulations were void in that—

they make the Importer's rights under said statutes dependent upon the acts of a third party who is a stranger to the importation and over whom the Importer has no right or power of control.

The court of appeals in deciding against the importer's contention made use of the following language:

It will be observed that section 309, *supra*, in making provision for exemption of ships' supplies from customs duties or internal-revenue tax, states, "but no such article shall be landed at any port or place in the United States or in any of

its possessions." Clearly, the exemption is made conditional and this condition can only mean that should bonded ships' supplies be so landed they would be subject to the payment of duties or internal-revenue tax. The quoted clause is therefore construed to be a *proviso* or a condition essential to exemption.

Since the statute itself prescribes that ships' supplies are only conditionally free of duty or tax, under regulations by the Secretary of the Treasury, it appears to us that the involved regulations, compliance with which merely insures that the intention of the Congress be carried out, are in conformity with the statute.

\*       \*       \*       \*       \*       \*       \*

The regulations are entirely within the authority of the Secretary of the Treasury and in view of the statute are reasonable and must be complied with.   \*   \*   \*

In the case at bar, we again have a situation where the fuel oil was not "entered by a representative of the vessel in a special bound stores log book of the vessel," as required by the regulations here involved. This regulation serves the same purpose in all material respects as did the earlier regulations involved in the *Mexican Petroleum Corp.* case, *supra,* in that it serves to apprise customs officers at all subsequent ports to which the vessel may proceed of the presence of such stores on board and serves as a safeguard against the entry free of tax of taxable foreign merchandise. Although the official papers in evidence disclose that this oil was subsequently entered on the stores log, there is absolutely no proof as to the date of such entry, whether prior or subsequent to the time the vessel landed at Norfolk, and it is certain that "the customs officer who supervised the lading" was unable to "place his name and title after the entry in the log," as required by the regulation.

Although this appears to be a case of extreme hardship, in which the record shows that the failure to comply with the regulations was due to no fault on the part of the plaintiff or its agents, we are bound by the decision in the *Mexican Petroleum Corp.* case, *supra,* and are constrained to hold that the action of the collector was in conformity with law. The claims of the plaintiff herein are therefore overruled.

Judgment will be rendered accordingly.