(C. D. 1811)

SOCONY-VACUUM OIL CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of internal revenue tax at ½ cent per gallon under section 3422 of the Internal Revenue Code on fuel oil withdrawn from warehouse on December 19, 1951. It is claimed that the merchandise was withdrawn for use as vessel supplies and is exempt from duty and internal revenue tax, by virtue of section 309 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The pertinent provisions of the tariff act, as amended, are as follows:

SEC. 309. SUPPLIES FOR CERTAIN VESSELS AND AIRCRAFT.

(a) EXEMPTION FROM CUSTOMS DUTIES AND INTERNAL-REVENUE TAX.— Articles of foreign or domestic manufacture or production may, under such regulations as the Secretary of the Treasury may prescribe, be withdrawn from bonded warehouses, bonded manufacturing warehouses, or continuous customs custody elsewhere than in a bonded warehouse free of duty or internal-revenue tax * * * for supplies (not including equipment) of vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions, * * *.

\*          \*          \*          \*          \*          \*          \*

The regulations issued under said section, in effect at the time of this exportation, are as follows (Customs Regulations of 1943, as amended):

10.60 **Forms of withdrawals; bond.**—(*a*) Withdrawals from warehouse shall be made on customs Form 7506. Withdrawals from continuous customs custody elsewhere than in a bonded warehouse shall be made on customs Form 7512.

\*          \*          \*          \*          \*          \*          \*

**10.61 Withdrawal permit; lading; stores log.**—(a) Upon the filing of the withdrawal and the execution of the bond, when required, the collector shall issue a permit on customs Form 7506–A or 7512.

(b) Upon the lading on a vessel of supplies withdrawn from bond for which an affidavit is required under section 10.64 of these regulations, they shall be entered by a representative of the vessel in a special bound stores log book of the vessel in ink or indelible pencil. The stores log shall be kept on board available for customs inspection and use at any time and shall contain the following information with respect to each withdrawal: Port where laden; date of lading; withdrawal number; quantity and description. After the supplies have been so entered in the vessel's stores log, the customs officer who supervised the lading thereof shall place his name and title after the entry in the log. (Sec. 5 (a), 52 Stat. 1080; 19 U. S. C. 1309 (a).)

\*     \*     \*     \*     \*     \*     \*

**10.64 Crediting or cancellation of bonds.**—(a) · The warehouse or rewarehouse entry bond or the bond provided for in section 10.60 (c) or (f) covering articles withdrawn for use as supplies of a vessel may be credited or canceled in respect of such articles if an affidavit in the form prescribed below is filed with the collector at the port of withdrawal within 6 months after the date of withdrawal. \* \* \*

When this case was called for trial, the following statements were made by counsel:

MR. CARTER: This protest relates to fuel oil which was furnished to a vessel in foreign trade.

I offer in evidence all of the papers attached to the entry and offer to stipulate that the facts contained therein are true and correct.

MRS. BENNETT: I have no objection to all of the papers forwarded by the collector being received in evidence, your Honor.

CHIEF JUDGE OLIVER: All right.

MR. CARTER: I will concede for the record that these bunker supplies were not laden under customs supervision, and that the customs inspector did not place his initials in the log book as required by the last sentence of section 10.61 (b) of the customs regulations of 1943.

MRS. BENNETT: The Government accepts that concession.

The case was then submitted.

The merchandise involved herein is part of a shipment of fuel oil which was entered for warehouse at the port of Philadelphia on March 13, 1951. Among the papers submitted is a warehouse withdrawal on customs Form 7506, dated December 14, 1951, stating that the merchandise was withdrawn conditionally free of duty under section 309 for the purpose of ships' supplies for the vessel "British Chemist" bound for England. The same information appears on the warehouse withdrawal permit on customs Form 7506–A, signed by the acting deputy collector. According to a lighterage ticket on customs Form 6043–A, the merchandise was delivered to the barge "Argoil # 10" on December 19, 1951, for shipment to the "British Chemist."

Additional information is contained in a memorandum, dated December 28, 1951, signed by Inspector S. K. Cressman, reading as follows:

1. The British M/T "BRITISH CHEMIST" arrived K P A 12:35 P. M. 17 Dec 51 from Hull, England in Water Ballast.

2. Socony Vacuum, Philadelphia office, notified Customs bonded fuel on Wdl. 01439 would be placed aboard; ordered an Inspector for 8:00 A. M. 19 Dec 51 to travel by Delaware River Harbor Service launch from Pier 3 South.

3. There was no barge alongside the BRITISH CHEMIST when the Inspector arrived. Search of the area for a barge was made: none was found. The Inspector returned.

4. The Philadelphia office of Socony Vacuum, notified that the oil was not laden, promised to investigate and call. This they did not do.

5. Report has been received from the Refinery office of Socony Vacuum that the oil was indeed laden in the afternoon—possibly two or three o'clock—19 Dec 51, but without Customs Supervision.

Under section 309 (a), *supra*, articles are entitled to exemption from duty and internal revenue tax where it is established that they have been withdrawn from bonded warehouse or continous customs custody elsewhere; that they were laden on board a vessel for use as ship's supplies; and that the vessel was actually engaged in a trade specified by the statute. Under this section, it has been held that where fuel oil has been withdrawn from warehouse and laden upon a vessel engaged in foreign trade for supplies of that vessel, it is regarded as an exported article and is entitled to exemption. *Asiatic Petroleum Corp.* v. *United States*, 36 C. C. P. A. (Customs) 9, C. A. D. 389.

In the instant case, the exemption was denied by the collector, on the ground that proof of exportation was not furnished. Plaintiff's view is that the collector's action was due solely to the noncompliance with section 10.61 (*b*) of the regulations. It is claimed that that section is unreasonable and invalid, in that it requires action by persons over whom plaintiff has no control, citing *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122. The regulation in that case required the importer to furnish an affidavit of the master builder, general storekeeper, or superintendent, showing that the materials had been used in the construction or repair of a vessel. The Navy Department, to whom the materials had been sold, refused to furnish such affidavits. The court held the regulation unreasonable and invalid, on the ground that it left importers' rights to the mercy and good will of persons not identified with the importation or subject to their control.

However, a later case held valid a regulation analogous to the one before us. *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. (Customs) 90, C. A. D. 130. The regulation provided that, except where a vessel cleared directly for a foreign port, merchandise with-

drawn as supplies should be entered on the store list of the vessel on which laden. Plaintiff claimed that the regulation was invalid in that it made the importer's rights dependent upon the acts of a third party over whom it had no control. At that time, section 309 of the Tariff Act of 1930 contained a proviso, stating "but no such article shall be landed at any port or place in the United States or in any of its possessions." The court held that, in view of the proviso, the regulation was reasonable and valid, stating (p. 99):

Since the statute itself prescribes that ships' supplies are only conditionally free of duty or tax, under regulations by the Secretary of the Treasury, it appears to us that the involved regulations, compliance with which merely insures that the intention of the Congress be carried out, are in conformity with the statute.

While the proviso mentioned by the court is not in section 309, as amended, the articles covered thereby are still only conditionally free. They are not exempt unless withdrawn for use as supplies and laden on a vessel engaged in a specified trade. Thus, if action by a third party may reasonably be required under the circumstances of the *Mexican Petroleum* case, it may also be required here.

The *Mexican Petroleum* case was, in fact, followed by this court in a case involving the regulation now before us. *Standard Oil Co. of Puerto Rico* v. *United States*, 23 Cust. Ct. 70, C. D. 1193. In that case, the person in charge of the vessel denied receipt of the oil and refused to make entry in the stores log book. It was conceded at the trial that the oil had been delivered on board the vessel and that the vessel was actually engaged in trade between the United States and its possessions. The Government claimed that the regulation was reasonable, valid, and mandatory, and the court held that exemption was properly denied by the collector for lack of compliance therewith.

In the *Mexican Petroleum* case, the court pointed out that the importer must have complied with the regulations for a period of over 4 years during which it sold bonded oil as fuel supplies in 175 instances, in all of which the regulations were observed. In the present case, plaintiff apparently complied with the regulations, insofar as the balance of the imported oil is concerned, since no tax was assessed thereon. As to the merchandise before us, plaintiff has not established that it suffered any hardship by reason of the regulation; it has not shown that a representative of the vessel refused to enter the supplies in a stores log book or that the customs inspector refused to place his name and title after the entry. Regulations requiring a ship's officer to enter supplies on the vessel's stores log or on the manifest have been in effect for a long time. See article 505, Customs Regulations 1892; article 774, Customs Regulations 1899; article 746, Customs Regulations 1908; article 413, Customs Regulations 1915; article 436, Customs Regulations 1923; articles 458 (c) and 459, Cus-

toms Regulations 1931; and articles 467 (c) and 468, Customs Regulations 1937.

Furthermore, a portion of the present regulation (the last sentence of section 10.61 (b), *supra*) indicates that the lading of the vessel supplies was to be under customs supervision. This part of the regulation is undoubtedly reasonable, since it provides a means of furnishing the collector with the essential fact that the merchandise has been laden upon the vessel. Customs supervision is generally required where an allowance is to be made for exported or destroyed merchandise. See sections 557 and 558 of the Tariff Act of 1930, as amended. Since the instant merchandise was laden without customs supervision, it is evident that a portion of the regulations, which is unquestionably valid, has not been complied with.

Even if the regulation, or any part thereof, were unreasonable and invalid, plaintiff would still be required to establish that its merchandise was entitled to exemption under the statute. *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 492, T. D. 36123. The evidence presented on this point shows that the oil was withdrawn from warehouse and placed on board a barge for delivery to the vessel "British Chemist." What happened to the barge thereafter does not appear. The inspector assigned to supervise the lading of the oil could not locate it. It may have discharged the oil in the United States, or it may have loaded it upon some vessel other than the "British Chemist." Inspector Cressman's memorandum states only that it was reported that the oil was laden in the afternoon of December 19, without customs supervision. This statement is not competent evidence that the identical oil was, in fact, laden on the vessel "British Chemist." There is nothing to show who made the report to the inspector or that he had any knowledge of the facts. While the memorandum has been received in evidence without objection on the part of the Government, hearsay statements therein do not constitute substantial evidence of the facts to be proved. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, C. A. D. 440; *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593.

Furthermore, there is no evidence in the record that the vessel "British Chemist" was actually engaged in foreign trade. All that is before us is a notation on the warehouse withdrawal stating that the vessel cleared for Falmouth, England. Unless the vessel is actually engaged in a trade specified by the statute, supplies placed aboard are not exempt from duty. *Standard Oil Company of New Jersey* v. *United States*, 32 C. C. P. A. (Customs) 190, C. A. D. 306; *United States* v. *Esso Export Corporation*, 42 C. C. P. A. (Customs) 51, C. A. D. 569.

The evidence herein does not establish that the merchandise was exported, that is, that it was actually laden upon a vessel engaged in a trade specified by the statute for use as supplies. The collector's action in assessing internal revenue tax on the merchandise is sustained by the record.

The protest is overruled and judgment will be rendered for the defendant.